UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| LAURIE A. BODE, and MICHAEL D. NORRIS, individually and as parents and guardians of MAKOTA Z. NORRIS, a deceased minor, <br><br> Plaintiffs, <br> v. <br><br> PARKVIEW HEALTH SYSTEM, INC., and WHITLEY MEMORIAL HOSPITAL, INC., d/b/a PARKVIEW WHITLEY HOSPITAL, <br><br> Defendants. | CAUSE NO. 1:07CV0324 RL |

## Affiavit of Jeffery Brookes, M.D.

Jeffery Brookes, MD, having been first duly sworn, being over the age of eighteen and having personal knowledge of the following matters, states:

1. At all relevant times herein, I have been a physician licensed to practice medicine in the State of Indiana and have been employed by Whitley Memorial Hospital, Inc. d/b/a Parkview Whitley Hospital as Chief Physician/Quality Officer.

2. On December 26, 2005, Parkview Whitely Hospital had a policy in effect with respect to the hospital's compliance with the Emergency Medical Treatment Act ("EMTALA"). Attached is a copy of that policy.

3. Under the medical staff bylaws, only physicians who are credentialed to perform a Medical Screening Examination are permitted to perform such an examination.

4. As such, Emergency Department nurses and other staff are not permitted to perform a Medical Screening Examination.

5. As of December 26, 2005, both David Hurley MD and Joachin Okafor, MD were credentialed to perform a Medical Screening Examination in the Emergency Department at Parkview Whitely Hospital.

6. It is within the medical judgment of the physician who performs the Medical Screening Examination to determine what history, examination and testing is needed in

order to determine whether the patient has an Emergency Medical Condition, as defined by the attached hospital policy.

7. It is within the medical judgment of the physician who performs the Medical Screening Examination to determine whether the patient is in a stable condition and safe to be discharged from the hospital.

8. I have reviewed the hospital chart for Makota Norris who was evaluated by David Hurley MD and Joachin Okafor, MD at the Emergency Department at Parkview Whitley Hospital on December 26, 2005.

9. From my review, it appears that Makota Norris received Medical Screening Examinations from both Dr. Hurley and Dr. Okafor and that Dr. Okafor, who was the physician in the Emergency Department at the time the decision was made to discharge the patient, was of the opinion, after consulting with Dr. Dick, that the patient was suffering from acute gastroenteritis and did not have an "Emergency Medical Condition" as that term is defined by the attached hospital policy.

10. From my review it further appears that the examination, testing, and consultation that was done by Dr. Hurley and Dr. Okafor was comparable to the examinations and testing offered to other patients at Parkview Whitely who present with similar symptoms and that the examination and testing was designed to identify acute and severe symptoms that would ordinarily alert them of the need for immediate attention to prevent serious bodily injury or death.

11. It is hospital policy that blood pressures are not routinely taken in the Emergency Department on children under six years of age. If the Emergency Physician is of the opinion that the nursing staff needs to take a minor's blood pressure before the physician can make an accurate diagnosis of the patient's condition, the Emergency Physician will order the nurse to take the patient's blood pressure.

12. Further deponent sayeth naught.

I affirm under penalties of perjury that the foregoing statements are true and correct.


_____          _____
Jeffery Brookes, MD                                                           Date

| Parkview Whitley Hospital | ADMINISTRATIVE POLICY & PROCEDURE MANUAL |
|---|---|
| Policy & Procedure Title: COBRA/EMTALA~Emergency Medical Treatment and Active Labor Act<br>Category: Patient Care | |

I.    **POLICY STATEMENT:** This policy describes the responsibilities of Parkview Whitley Hospital ("Parkview Whitley" or "Hospital") with respect to acceptance of appropriate Transfers of patients to Parkview Whitley and appropriate Transfers of patients from Parkview Whitley to other medical facilities.

     **A. Right to Treatment.** Even if an individual cannot pay, does not have medical insurance, or is not entitled to Medicare or Medicaid, the Hospital recognizes the right of the individual to receive, within the Capability and Capacity of the Hospital's staff and facilities:
        1. An appropriate Medical Screening Examination;
        2. Necessary Stabilizing treatment for an Emergency Medical Condition (including treatment for an unborn child); and
        3. If necessary, an appropriate Transfer to another facility.

     **B. No Delay for Inquiry.** A Medical Screening Examination, Stabilizing treatment for an Emergency Medical Condition, or appropriate Transfer will not be delayed to inquire about the individual's method of payment, insurance status or Medicare/Medicaid authorization, or to obtain consent for treatment.

With the exception of Labor and Delivery and psychiatric patients, Hospital Administration has delegated to the Bed Management/Hospital Admissions Department the authority to determine whether Parkview Whitley has the Capability and Capacity at the time of Transfer to accept, delay, or deny Transfer of an individual. The Bed Management/ Hospital Admissions Department will make this determination on a case-by-case basis at the time another facility requests Transfer of an individual to Parkview Whitley. A request for Transfer of an individual to Parkview Whitley also must be accepted by a physician who will assume the care of the individual upon the individual's arrival.

Parkview Whitley must accept Transfer of an individual from another facility if:

- Parkview Whitley has specialized capabilities or facilities that the transferring hospital does not have (see paragraph V, page 8 of this Policy), and Parkview Whitley has the Capability and Capacity to accept the individual at the time of Transfer; or
- The transferring hospital does not have Capacity at the time of Transfer, and Parkview Whitley does have Capability and Capacity to treat the individual.

Parkview Whitley may but is not required to accept Transfer of an individual from another facility if that other facility has the Capability and Capacity to treat the individual but the individual requests Transfer to Parkview Whitley. Parkview Whitley cannot accept such a

| Origination Date: 10/01 | Source: Parkview Health |
|---|---|
| Revision Date(s): 5/03 | Authorized by: Medical Executive Comm |
| Review Date(s): | Page 1 of 9 |

| Parkview Whitley Hospital | ADMINISTRATIVE POLICY & PROCEDURE MANUAL |
|---|---|
| Policy & Procedure Title: COBRA/EMTALA~Emergency Medical Treatment and Active Labor Act<br>Category: Patient Care | |

Transfer unless it has the Capability and Capacity to treat the patient at the time of the patient's request for Transfer.

II. **DEFINITION OF TERMS**

    A. **Capability** means the physical space, equipment, supplies, and services that the Hospital provides (e.g., surgery, psychiatry, obstetrics, intensive care, pediatrics, trauma care, etc.). Capabilities of the staff of a facility means the level of care that the personnel of the Hospital can provide within the training and scope of their professional licenses and privileges.

    B. **Capacity** means that the Hospital is able to accommodate the individual requesting examination or treatment. Capacity encompasses such things as having an adequate number available of qualified staff, open beds, and available equipment at the time a request for Transfer is received. Capacity also encompasses the Hospital's past practices of accommodating additional patients in excess of its occupancy limits.

    C. **Comes to the Emergency Department** means that an individual requests examination or treatment and is on Hospital property. Hospital property includes the entire main Hospital campus, parking garage and lots, sidewalks, and driveways.

    Hospital campus means the physical area immediately adjacent to the Hospital's main building and other areas and structures that are not strictly contiguous to the main building but are located within 250 yards of the main buildings.

    Hospital property also includes any facility that is located off the main campus but has been determined to be a department of the Hospital, i.e., any facility that is operated under the Hospital's Medicare provider number.

    Hospital property also includes a patient in a Hospital-owned and -operated ambulance, even if the ambulance is not yet on the Hospital property. In the event that a Hospital-owned/operated ambulance is requested to bypass the local emergency department to go to a tertiary hospital for the provision of critical care, these patients are considered "emergency Transfers" and all appropriate communication and documentation will be provided.

    D. **Emergency Medical Condition** means a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain, psychiatric disturbance, and/or symptoms of substance abuse) such that the absence of immediate medical attention could reasonably be expected to result in:

| Origination Date: 10/01 | Source: Parkview Health |
|---|---|
| Revision Date(s): 5/03 | Authorized by: Medical Executive Comm |
| Review Date(s): | Page 2 of 9 |

1. Placing the health of the individual (or, with respect to a pregnant woman, the health of the woman or her unborn child) in serious jeopardy;
2. Serious impairment of any bodily functions;
3. Serious dysfunction of any bodily organ or part; or
4. With respect to a pregnant woman who is having contractions:
    a. That there is inadequate time to effect a safe Transfer to another hospital before delivery, or
    b. That the Transfer may pose a threat to the health or safety of the woman or the unborn child.

E. **Individual** means a person who Comes to the Emergency Department requesting medical care. With respect to a person who is not able to request care for himself or herself (e.g., a minor or an incompetent or unconscious person), Individual also means such person's legal decision-maker.

F. **Medical Screening Examination**: The purpose of a Medical Screening Examination is to determine whether an individual has an Emergency Medical Condition. The scope of a Medical Screening Examination depends on the individual's presenting symptoms and can range from a brief history and physical to a complex process involving ancillary studies and on-call physicians. Triage is not equivalent to a medical screening examination.

G. **Qualified Medical Personnel (QMP)** means an individual permitted by the Hospital medical staff bylaws or rules and regulations to perform Medical Screening Examinations and credentialed to do so.

H. **Stabilize** means, with respect to an Emergency Medical Condition, to provide such medical treatment of the condition as may be necessary to assure, within reasonable medical probability, that no material deterioration of the condition is likely to result from or occur during the Transfer of the individual from a facility, or, with respect to a pregnant woman in labor, that the woman has delivered the child and the placenta.

I. **Transfer** means the movement (including the discharge) of an individual outside the Hospital's facilities at the direction of any person employed by (or affiliated or associated, directly or indirectly with) the Hospital, including any member of the medical staff, but does not include such a movement of an individual who has been declared dead, or who leaves the facility without the permission of any such person.

| Origination Date: 10/01 | Source: Parkview Health |
|---|---|
| Revision Date(s): 5/03 | Authorized by: Medical Executive Comm |
| Review Date(s): | Page 3 of 9 |

    **J.** Bed Management/Admissions refers to staff at PWH responsible for assigning patients to rooms. This refers to the shift supervisor in collaboration with patient registration.

**III. PATIENT EVALUATION AND TREATMENT**

    **A.** When an individual Comes to the Emergency Department seeking medical treatment, a physician or Qualified Medical Person (QMP) must provide to the individual a Medical Screening Examination to determine whether the individual has an Emergency Medical Condition.

    **B. Minors:** The Hospital must conduct a Medical Screening Examination on any unaccompanied minor who requests examination or treatment. The Hospital must attempt to contact the child's parent or legal guardian, but must not delay a Medical Screening Examination to obtain consent regardless of how trivial the complaint appears initially. If the Medical Screening Examination reveals no Emergency Medical Condition, then the Hospital must wait to obtain proper consent before proceeding with further evaluation or treatment, and no further treatment may be provided until consent is obtained. If the minor has an Emergency Medical Condition, then the physician and Hospital must treat and Stabilize the condition while other staff continues to attempt to obtain consent from a parent or legal guardian.

    **C. Private patients** means individuals who come to the Emergency Department to be examined by their private physicians and not by the emergency physicians at the Hospital. All private patients will be triaged according to Hospital policy and will receive a Medical Screening Examination by a physician or QMP, unless the private physician arrives and assumes the care of the individual before the Medical Screening Examination occurs. If the Medical Screening Examination reveals that the individual has an Emergency Medical Condition, the individual will receive necessary Stabilizing treatment in the same manner as any other patient, and the private physician will be notified as soon as possible of the situation. If the individual does not have an Emergency Medical Condition, no further care will be provided until the private physician arrives to assume the care of the individual. However, the individual will be monitored and reassessed as needed to ensure that the individual does not develop an Emergency Medical Condition while awaiting the arrival of the private physician.

| Origination Date: 10/01 | Source: Parkview Health |
|---|---|
| Revision Date(s): 5/03 | Authorized by: Medical Executive Comm |
| Review Date(s): | Page 4 of 9 |

D. The Hospital will not delay providing the Medical Screening Examination or Stabilizing treatment to inquire about the individual's method of payment or insurance status.

E. If the physician or QMP determines after a Medical Screening Examination that the individual does not have an Emergency Medical Condition, this policy and EMTALA cease to apply. If the physician or QMP determines that the individual has an Emergency Medical Condition, the Hospital must provide either:
   1. Such additional medical treatment that is within the Capacity and Capability of the Hospital and that is required to Stabilize the medical condition, **or**
   2. Appropriate Transfer of the individual to another medical facility.

F. If the individual's Emergency Medical Condition is Stabilized, this policy and EMTALA cease to apply.

G. **Refusal to Consent to Examination or Treatment:** If an individual refuses to consent to a Medical Screening Examination or treatment to Stabilize an Emergency Medical Condition:
   1. Determine whether the individual is competent to refuse the Medical Screening Examination or Treatment.
   2. Inform the individual of the Hospital's obligation under the law to provide a Medical Screening Examination and Stabilizing treatment regardless of the individual's ability to pay.
   3. Offer the Medical Screening Examination or Stabilizing treatment.
   4. Explain the risks and benefits of the Medical Screening Examination or Stabilizing treatment so that the individual can make an informed decision.
   5. If possible, secure the individual's written refusal of the Medical Screening Examination or Stabilizing treatment (see AMA/Elopement Form). If the patient refuses to sign the form before leaving, the person who discussed the issues with the individual and witnessed the individual's refusal must sign the form and document the interaction both on the AMA form and on the individual's chart, if a chart has been generated.
   6. Welcome the individual to return at any time.

H. **Elopement:** If an individual leaves the Hospital before receiving a Medical Screening Examination, i.e., elopement:
   1. A staff member must call the individual's name and/or check the waiting area to see if the individual is still present before determining that the individual has eloped.

| Origination Date: 10/01 | Source: Parkview Health |
|---|---|
| Revision Date(s): 5/03 | Authorized by: Medical Executive Comm |
| Review Date(s): | Page 5 of 9 |

2. Efforts to locate the individual must be documented and timed on the medical record.
3. Once it is evident that the individual has eloped, the record should be reviewed by the emergency physician on duty. If the physician discovers something of concern regarding the individual's chief complaint, a staff member must attempt to contact the individual, if the individual provided contact information prior to elopement, and encourage him/her to return to the Emergency Department. The attempt to contact the individual must be documented on the AMA form and on the chart, if a chart was generated.
4. The registration papers, Emergency Department documentation, and physician documentation will be kept in the individual's medical record.

IV. PATIENT TRANSFER

A. **Transfer of a Patient with an Emergency Medical Condition**
   1. If an individual has an Emergency Medical Condition that has not been Stabilized, the Hospital may not transfer the individual unless:
      a. The individual requests in writing Transfer against medical advice after being informed of the risks of transfer and the Hospital's responsibility to provide Stabilizing treatment.
      b. The Transferring physician (or QMP after consultation with the physician) signs the Certificate of Transfer Form (Attachment A to this policy) stating that, based on the information available at the time of Transfer, the medical benefits reasonably expected from the provision of medical treatment at another medical facility outweigh the increased risks to the individual (and in the case of a woman in labor, to the unborn child) of the Transfer. The Certificate of Transfer must contain a summary of the risks and benefits. If the QMP signs the Certificate, the physician must countersign the Certificate as soon as possible.
      c. The Transfer must be an appropriate Transfer.
   2. **Appropriate Transfer:** For a Transfer to be appropriate, the Hospital must:
      a. Provide medical treatment within the Hospital's Capability and Capacity that minimizes the risks to the individual's health and, in the case of a woman in labor, to the health of the unborn child;
      b. Obtain agreement from a receiving facility that the receiving facility has the Capability and Capacity to treat the individual and that it will accept the Transfer and provide appropriate medical treatment;
      c. Use qualified personnel and transportation equipment as required to effect the Transfer safely, including using necessary and medically appropriate life support measures during the Transfer; and

| Origination Date: 10/01 | Source: Parkview Health |
|---|---|
| Revision Date(s): 5/03 | Authorized by: Medical Executive Comm |
| Review Date(s): | Page 6 of 9 |

| Parkview Whitley Hospital | ADMINISTRATIVE POLICY & PROCEDURE MANUAL |
|---|---|
| Policy & Procedure Title: COBRA/EMTALA~Emergency Medical Treatment and Active Labor Act <br> Category: Patient Care | |

        d. Send to the receiving facility copies of all available medical records related to the Emergency Medical Condition and the Certificate of Transfer Form (See Attachment A). As soon as practicable after the Transfer, send by facsimile copies of any records not available at the time of Transfer (e.g., lab results that were not yet available at the time of Transfer).

        Records to be sent include any available history, observations of signs or symptoms, preliminary diagnosis, result of diagnostic tests or telephone reports of test results, and treatment provided. The name and address of any on-call physician who refused or failed to appear within a reasonable time to provide necessary Stabilizing treatment to the individual shall be forwarded to the Parkview Whitley Health Risk Management Department.

    3. **Refusal to Consent to Transfer:** If an individual with an Emergency Medical Condition refuses to consent to Transfer to another medical facility, the physician or QMP must:
        a. Explain the risks and benefits of the Transfer to the individual.
        b. Take all reasonable steps to obtain the written informed refusal of the Transfer from the individual. The refusal should be signed, dated and placed in the individual's medical record.
        c. Document the proposed Transfer in the individual's medical record. The written documentation must reflect that the individual has been informed of the risks and benefits of the proposed Transfer and should state the reasons for the refusal, if the individual articulates a reason for the refusal.
        d. If the individual remains at the Hospital after refusing Transfer, the Hospital must provide medical treatment within its Capability and Capacity to treat the individual's condition.

**V.    ACCEPTANCE OF TRANSFERS**

    A. **Obligation to Accept Certain Transfers:** The Hospital must accept from another hospital within the United States the appropriate Transfer of an individual with an Emergency Medical Condition if:
      1. The Hospital has specialized capabilities or facilities such as a burn unit, shock-trauma unit, neonatal intensive care unit (or the hospital is in a rural area and is a regional referral center); and
      2. The transferring hospital does not have the specialized capability; and
      3. The Hospital has the Capability and Capacity to treat the individual at the time of Transfer.

| Origination Date: 10/01 | Source: Parkview Health |
|---|---|
| Revision Date(s): 5/03 | Authorized by: Medical Executive Comm |
| Review Date(s): | Page 7 of 9 |

| Parkview Whitley Hospital | ADMINISTRATIVE POLICY & PROCEDURE MANUAL |
|---|---|
| Policy & Procedure Title: COBRA/EMTALA~Emergency Medical Treatment and Active Labor Act  Category:  Patient Care | |

## VI. OTHER EMTALA REQUIREMENTS

A. **Reporting:** If at any time any employee or any person in any way affiliated with the Hospital has reason to believe the Hospital may have received an individual who was Transferred with an unstabilized Emergency Medical Condition from another hospital in violation of the requirements of EMTALA, **immediately** notify the shift supervisor, complete and forward an event report to Risk Management.

B. **Protection Against Retaliation.** The Hospital will not penalize or take action against any physician or QMP who refuses to authorize the Transfer of an individual with an Emergency Medical Condition that has not been Stabilized, or against any Hospital employee or any other individual who reports a violation of EMTALA.

C. **Signage.** The Hospital must post a sign in the Emergency Department stating the rights of individuals under EMTALA and stating that the Hospital participates in the Medicaid program.

D. **List of On-Call Physicians.** The Hospital must maintain a list of physicians who are on call for duty after the initial Medical Screening Examination to provide treatment necessary to Stabilize an individual with an Emergency Medical Condition.

E. **Emergency Room Log.** The Hospital must maintain a log of each individual who Comes to the Emergency Department seeking assistance. The log must indicate whether the individual refused treatment, was refused treatment, was Transferred, was admitted to the Hospital and treated, left AMA/eloped, was Stabilized and Transferred, or was discharged.

F. **Record Retention.** The Hospital must maintain medical and other records related to individuals Transferred to or from the Hospital for a period of five years from the date of the Transfer.

## VII. PROCEDURE FOR ACCEPTANCE OF TRANSFERS TO PARKVIEW WHITLEY HOSPITAL

The Parkview Whitley Hospital Shift Supervisor has the most accurate and current information regarding patient census and bed availability. Therefore, Parkview Whitley Hospital administration has delegated to the Shift Supervisor the authority to determine, on a case-by-case basis at the time a request for Transfer is made, whether Parkview Whitley has the Capacity and Capability to accept Transfer of an individual to Parkview Whitley. No request for Transfer will

| Origination Date: 10/01 | Source: Parkview Health |
|---|---|
| Revision Date(s): 5/03 | Authorized by: Medical Executive Comm |
| Review Date(s): | Page 8 of 9 |

| Parkview Whitley Hospital | ADMINISTRATIVE POLICY & PROCEDURE MANUAL |
|---|---|
| Policy & Procedure Title: COBRA/EMTALA~Emergency Medical Treatment and Active Labor Act <br> Category: Patient Care | |

be denied if Parkview Whitley has the Capacity and Capability to accept the Transfer at the time the request is made.

Process for Request to Transfer Patient to Parkview Whitley Hospital:

    A. Any call to any department requesting Transfer of an individual to Parkview Whitley must be transferred to the Shift Supervisor at extension 89411.

    B. The Shift Supervisor will request the following information to determine whether the Hospital has the Capacity and Capability to accept the Transfer:
       1. Patient name
       2. Diagnosis
       3. Type of bed needed, e.g., intensive care, medical/surgical, pediatrics, etc.
       4. Admission status, i.e., 23-hour observation or in-patient
       5. Estimated time of arrival
       6. Parkview Whitley medical staff physician accepting the Transfer
       7. Transferring physician
       8. Transferring facility

    C. Based on the information above, the Shift Supervisor will determine whether the Hospital has the Capacity and Capability to accept the Transfer. If the Hospital can accept the Transfer, the following steps will occur:

       1. If necessary, the Shift Supervisor will contact the accepting physician or the transferring facility to obtain any of the information listed above that is not provided in the initial request for Transfer.

       2. Pursuant to internal department processes, the Shift Supervisor will coordinate the details of the admission, including contacting the nursing unit to which the individual is to be admitted, routing admitting orders to the unit if any are received, etc.

| Origination Date: 10/01 | Source: Parkview Health |
|---|---|
| Revision Date(s): 5/03 | Authorized by: Medical Executive Comm |
| Review Date(s): | Page 9 of 9 |